UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

David C. Kea, Sr.,

       Plaintiff,

v.                              Case No. 13-12991

Patrick R. Donahoe, Postmaster      Sean F. Cox
General of the United States,        United States District Court Judge

       Defendant.
_____/

**<u>OPINION & ORDER</u>**

Plaintiff brought this employment discrimination action against his employer, the United States Postal Service, alleging unlawful race discrimination and retaliation claims under Title VII. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on August 6, 2015. For the reasons set forth below, the Court shall GRANT THE MOTION IN PART AND DENY IT IN PART. The motion shall be GRANTED to the extent that Defendant is entitled to summary judgment in its favor with respect to the following claims: 1) Plaintiff's disparate-treatment race-discrimination claim based upon being placed on off-duty status in 2010; and 2) Plaintiff's hostile work environment claims based on both race and retaliation. The Motion shall be DENIED in all other respects. As such, the following claims shall proceed to trial: 1) Plaintiff's disparate-treatment race-discrimination claim based upon the vehicle restriction; and 2) Plaintiff's retaliation claim based upon the vehicle restriction.

1

# BACKGROUND

Acting *pro se*, Plaintiff David C. Kea, Sr. ("Plaintiff" or "Kea") filed this action against Defendant Patrick R. Donahoe, the Postmaster General of the United States Postal Service and two individual defendants. Plaintiff later obtained counsel and dismissed the individual defendants, leaving the Postal Service as the only remaining defendant.

Plaintiff's "Amended Complaint Second With Jury Demand" is Plaintiff's operative Complaint in this action and it includes the following counts: 1) "Unlawful Discrimination Based On Race/National Origin" in violation of Title VII (Count I); 2) "Retaliation" in violation of Title VII (Count II); and 3) "Discrimination Through Conflict of Interest and Criminal Activity in Violation of 42 U.S.C. § 1981A" (Count III). But on June 19, 2014, Plaintiff stipulated to dismissing Count III and striking his request for punitive damages. (*See* Docket Entry No. 37). Thus, only Counts I and II remain.

Following the close of discovery, Defendants filed a Motion for Summary Judgment. (Docket Entry No. 43).

This Court's practice guidelines, which are expressly included in the Scheduling Order issued in this case, provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also

include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 30 at 2-3).

Both parties complied with the practice guidelines.  Thus, as to Defendant's Motion for Summary Judgment, Defendants submitted a Statement of Material Facts Not In Dispute, which shall be referred to as "Def.'s Stmt.", and Plaintiff filed a Counter-Statement of Disputed Facts, which shall be referred to as "Pl.'s Stmt."  (Docket Entry Nos. 43-1 and 46-2).

The following material facts are gleaned from the evidence submitted by the parties, viewed in the light most favorable to Plaintiff, the non-moving party.

Plaintiff began working for the United States Postal Service on August 18, 1984, as a part-time flexible letter carrier at the Plymouth, Michigan Post Office.  (Def.'s and Pl.'s Stmt. at ¶ 1).  Plaintiff became a full-time, regular letter carrier in October of 1985.  (*Id*. at ¶ 2).

In December of 1989, the Postal Service issued Plaintiff a Notice of Removal for failing to disclose his criminal history.  The Postal Service later reduced his Notice of Removal to a 7-day suspension.  (Def.'s and Pl.'s Stmt. at ¶ 3).

Plaintiff continued to work as a letter carrier until April 2008.  (Def.'s and Pl.'s Stmt. at ¶ 4).  While employed as a letter carrier, Plaintiff filed several EEO complaints.

**Plaintiff's EEO Activity While Employed As A Letter Carrier**

On April 1, 2004, Plaintiff filed an EEO Complaint alleging race discrimination and retaliation after the Postal Service denied him the opportunity to review his Official Personnel

3

Folder (OPF).  Plaintiff also alleged being denied the ability to move freely about the post office because of sexual harassment allegations.  (Def.'s and Pl.'s Stmt. at ¶ 5; Ex. I to Pl.'s Br.).

In June of 2004, Plaintiff filed an EEO Complaint, alleging race and age discrimination. Plaintiff alleged that he was denied a change in schedule while other employees, some of whom are white and younger, were allowed to change their schedules.  (Ex. I to Pl.'s Br.).

In February of 2005, Plaintiff filed an EEO Complaint, alleging he had been retaliated against in various ways.  (*Id.*).

In June of 2005, Plaintiff filed an EEO Complaint alleging retaliation after the Postal Service allegedly denied him time to complete EEO paperwork.  (Def.'s and Pl.'s Stmt. at ¶ 8).

**Plaintiff Bids On And, Ultimately Receives, A VOMA Position**

A Vehicle Operation Maintenance Assistant ("VOMA") is a job position at the Postal Service that services vehicle repairs including vehicle checks for flat tires, inoperable vehicle lights and electrical issues.  VOMAs also arrange for tow trucks from Postal Service contractors when necessary and locate parts at any of the Vehicle Maintenance Facilities ("VMF facilities"). VOMAs are responsible for bills related to vehicle repairs including verifying that repairs were completed and that the repair cost is accurate.  VOMAs also hire contractors.  (Def.'s and Pl.'s Stmt. at ¶¶ 9-12).   VOMAs are stationed in Plymouth, Westland, and Canton, Michigan.

Ken Ross (who is white) worked as a VOMA at Livonia; Karen Blackney (who is white) worked as a VOMA at Westland, Glen Erickson (who is white) worked as a VOMA at Canton.

The Postal Service also employs mechanics at the VMFs.  Mechanics inspect vehicles, replace parts, and perform repairs.  At the times relevant to Plaintiff's complaint, the Livonia VMF mechanics included: Bryan Ferguson (who is African-American), David Stroshein (who is

white), David Briscoe (who is white), Walter Sajewski (who is white), Mike Dillman (who is white), and Paul Guevara (who is Hispanic).  (Def.'s and Pl.'s Stmt. at ¶¶ 15-16).

Gary Robinson  supervised the mechanics and VOMAs at the Livonia VMF.  Robinson worked as a manager of the Livonia VMF from 2003 until March of 2011.  Carol Piechota works as the auto parts storekeeper at the Livonia VMF.  Piechota has worked in that position since 2006 and Robinson was her supervisor.  (Def.'s and Pl.'s Stmt. at ¶¶ 17-19).

In November of 2007, Plaintiff bid on a VOMA position at the Plymouth, Michigan Post Office.  Although the Postal Service posted that VOMA position at the Plymouth Post Office, Robinson would be that VOMA's supervisor.  After Plaintiff bid on that VOMA position, Robinson removed the VOMA posting from the Plymouth Post Office and instead posted it at the Livonia VMF.  As a result of moving the VOMA posting to Livonia, Plaintiff, a Plymouth Post Office employee, could no longer bid on the VOMA position.  Instead, only the Livonia VMF employees could bid on the VOMA posting.  (Def.'s and Pl.'s Stmt. at ¶¶ 20-23).

According to Plaintiff, Jack Warner, a retired VOMA, informed Robinson that Plaintiff intended to bid on the VOMA position once the Postal Service posted it at the Plymouth Post Office.  (Def.'s and Pl.'s Stmt. at ¶ 26).

Plaintiff filed an EEO Complaint over the VOMA position.  (Pl.'s Dep. at 26).  Both Plaintiff and Robinson attended an EEO redress concerning Plaintiff's bid for the VOMA position.  In resolution of Plaintiff's EEO Complaint, the Postal Service re-posted the VOMA position at the Plymouth Post Office.  (Def.'s and Pl.'s Stmt. at ¶ 31).

In April of 2008, Plaintiff bid for and received the VOMA position at the Plymouth Post Office.  (Def.'s and Pl.'s Stmt. at ¶ 32).

5

After the Postal Service awarded Plaintiff the VOMA position, Robinson re-posted the hours by changing the off-day to Tuesday. The Post Office, however, returned the hours to those listed on the original VOMA position, with Saturday as the off-day. Union representative Don Oziemski asked Robinson why he changed the off days and Robinson responded "because he can." (Def.'s and Pl.'s Stmt. at ¶¶ 33-35).

On May 16, 2008, Plaintiff wrote a letter to the then-Postmaster of the Plymouth Post Office, stating that employees at that office harassed him because they wanted a white employee named Lee Wetherford to receive the VOMA position. The Plymouth office employees, including Wetherford's wife, made comments to Plaintiff about washing their windows. The Plymouth Post Office employees, according to Plaintiff, also took tools out of Plaintiff's truck. Plaintiff complained to Robinson and Robinson bought Plaintiff new tools. (Def.'s and Pl.'s Stmt. at ¶¶ 36-37). Plaintiff also stated in that letter than an unidentified employee would not give him keys that he needed, and it took management a week to find them. (Ex. B to Pl.'s Br.). Plaintiff also complained about being denied overtime, being required to remove an ear piece, and that some employees were not parking correctly. (*Id.*).

Plaintiff typically begins his work day at the Plymouth Post Office, where he maintains an office, at about 7:00 a.m. Plaintiff is responsible for about 60 Plymouth and Northville vehicles. His job is to get those vehicles prepared and make sure they are running before the mail carriers need them. (Def.'s and Pl.'s Stmt. at ¶¶ 39-40). Plaintiff brings approximately four vehicles each day to the Livonia VMF. Plaintiff testified that he is "constantly moving from city to city. He travels "anywhere from Ann Arbor to Detroit," depending on where he need to pick up parts. (Def.'s and Pl.'s Stmt. at ¶¶ 43).

6

Plaintiff testified that in performing his job he would rarely speak with his supervisor, Robinson. That is, he would only speak to his supervisor about once a month regarding mileage, or if there was a problem or he needed to get a credit card. (Pl.'s Dep. at 15).

**Gorilla Picture Posted At Livonia VMF In 2008**

Plaintiff testified that, when he first started as a VOMA, there was a picture on the bulletin board in the lunchroom at the Livonia VMF that depicted a monkey and stated the words "Stupid mother-fucker." (Pl.'s Dep. at 42). Plaintiff testified that the picture was taken down at some point, after he "said something about it," but that the picture was up for "a long time." (*Id.*).

In opposition to Defendant's Motion for Summary Judgment, Plaintiff submitted an Affidavit that states that in "mid-2008, a gorilla picture was posted on the bulletin board in the hallway leading to the lunchroom and stayed up for at least a year. The gorilla picture," which he states is attached to his Affidavit, "depicts a gorilla scratching his head, with the caption 'Stupid Mother Fucker.'" The attachment to his Affidavit, however, actually has the words "Dumb Motherfucker" written on it. Plaintiff's Affidavit states that he found that picture highly offensive. He complained to Robinson about the picture but it was "not removed right away." (Pl.'s Aff. at 2).

Plaintiff perceived that picture to suggest that African-Americans are stupid gorillas and he construed the word "stupid" as "a code word for 'Nigger.'" (*Id.*).

**Strosheim and Plaintiff's 2008 Verbal Altercation**

Strosheim, a white male, worked as a mechanic for the Postal Service from October 3, 1983, until he retired on March 8, 2012. He also worked as the lead mechanic at the Livonia

7

VMF, but did not supervise Plaintiff.  (Def.'s and Pl.'s Stmts. at ¶¶ 44-45).

Plaintiff contends that Stroshein "disrespected him" several times before an incident that occurred with Stroshein in October of 2008.  (Pl.'s Dep. at 41).  Plaintiff contends Stroshein called Plaintiff "stupid" on several occasions.  (Def.'s and Pl.'s Stmt. at ¶ 60).

On October 22, 2008, Plaintiff traveled to the Livonia VMF in order to obtain parts to repair two broken-down vehicles.  When he arrived, Plaintiff requested parts from Stroshein. Plaintiff testified that when he asked Stroshein for parts, he responded, "I don't do parts" and then called Karen the VOMA in Westland and said, "Karen, here, Talk to David Kea.  I can't talk to stupid people.  I don't do parts."  (Pl.'s Dep. at 25-26).  Plaintiff ended the call with Karen, telling her this had nothing to do with her.  Plaintiff then said, "I've never disrespected you.  I don't appreciate you calling me by a name."  Stroshein responded, "Well, I don't do parts.  I just can't deal with stupid people."  Plaintiff then said "who do you think you are, calling me stupid?" Plaintiff testified that he was "getting hot" and said "Let's take this outside and discuss this like gentlemen because I ain't going to make it a circus out here.  Let's step outside and we can discuss this like gentlemen."  (Pl.'s Dep. at 27).

Robinson was not present during this incident.  (*Id.* at 28).  But Robinson talked to Stroshein about his comment to Plaintiff that he "hates stupid people."  (Def.'s and Pl.'s Stmt. at ¶ 53).

Robinson issued a Letter of Warning to Plaintiff based on his conduct on October 22, 2008.  (Def.'s and Pl.'s Stmt. at ¶ 54).  Plaintiff filed an EEO complaint regarding his letter of warning. (Def.'s and Pl.'s Stmt. at ¶ 59).

Robinson also issued a Notice of Suspension to Stroshein based on his conduct during

8

this incident (Ex. 10 to Def.'s Br.) but Stroshein testified that it was reduced to a "working suspension." (Ex. 29 to Def.'s Br.; Ex. H to Pl.'s Br. at 49-50).

**Ferguson's 2009 Remarks**

Plaintiff and Ferguson are both African-American. By all accounts, Plaintiff and Ferguson do not get along.

Plaintiff's relationship with Ferguson was good when Plaintiff began working as a VOMA. Plaintiff's relationship with Ferguson deteriorated because Plaintiff "wouldn't stop speaking to Paul Guevara." According to Plaintiff, Ferguson told Plaintiff that if he speaks to Guevara, Plaintiff "can't speak to him." (Def.'s Stmt. and Pl.'s Stmt. at ¶¶ 63-64). Ferguson and Plaintiff did not talk to each other after December 2008. (*Id*. at ¶ 68).

In April of 2009, Plaintiff went to the Livonia VMF to pick up a part. (*Id*. at ¶ 70). While he was there, Plaintiff heard Ferguson state, in a loud voice while working on a car, "somebody's not checking them mother fuckin' oils." (Pl.'s Dep. at 38-39). Plaintiff thought Ferguson was referring to him and complained about it to Robinson. Robinson issued Ferguson a Letter of Warning for "conduct" stating that Ferguson made disparaging remarks to another employee (Plaintiff) and that the other employee left instead of confronting him. (Def.'s Stmt. and Pl.'s Stmt. at ¶ 74; *see also* Ex. 29 to Def.'s Br.).

**Plaintiff Supports Guevara's EEO Case**

A Hispanic VMF mechanic named Guevara filed an EEO complaint. On July 14, 2010, Plaintiff wrote a letter in support of Guevara's EEO complaint, discussing the Livonia VMF's alleged harassment of Guevara. (Def.'s Stmt. and Pl.'s Stmt. at ¶ 90; *see also* Ex. 14 to Def.'s Br.). In that letter, Plaintiff stated that he has encountered employees at Livonia harassing

9

Guevara, a "Mexican employee," that profanity in the garage was a common occurrence, that Robinson had allowed such conduct, and that other employees would be in Robinson's office laughing and talking about Guevara. (Ex. 14 to Def.'s Br.).

**Monkey Cartoon In 2010**

Postal Employee Paul Guevara signed an Affidavit stating that there "was a chimpanzee cartoon posted on the stockroom wall at the Livonia VMF which had the caption, 'You can't fix stupid.' It was posted sometime in 2010 and remained up for several months at least." (Guevara Aff., Ex. J to Pl.'s Br., at ¶ 2). A copy of the cartoon is attached to Guevara's Affidavit.[1] Guevara states that, on several occasions he heard Stroshein call Plaintiff "stupid" to Plaintiff's face and behind Plaintiff's back.

Plaintiff's affidavit states that there was a "chimpanzee cartoon posted on the lunch room wall at the Livonia VMF which had the caption 'You Just can't fix stupid.'" (Pl.'s Aff. at ¶ 4). Plaintiff states that he "used the lunch room every day and had to pass by the picture every time." (*Id*. at ¶ 5).

**The Firewood Investigative Interview in 2010**

On July 9, 2010, Plaintiff and Piechota traveled to Northville to pick up a Postal Service vehicle from a contractor. The contractor had firewood available and Piechota asked Plaintiff to bring back some firewood for her personal use. Plaintiff put firewood in the back of the Postal service truck and brought it to the Livonia VMF. He put the firewood near the door. (Def.'s and Pl.'s Stmt. at ¶¶ 98-99).

---

[1]It is undisputed that Plaintiff did not produce the cartoon during discovery and produced it for the first time in responding to Defendant's motion.

Piechota testified that she was written up regarding the incident, for using a Postal vehicle for personal use.  (Piechota Dep. at 32).

On July 20, 2010, Robinson met with Plaintiff for an investigative interview.  Plaintiff's union steward was also present.  Robinson asked Plaintiff whether he used a Postal Service vehicle to transport wood to the Livonia VMF during work hours and Plaintiff admitted that he had transported wood to the Livonia VMF using a Postal Service vehicle and on Postal Service time.  (Def.'s and Pl.'s Stmt. at ¶¶ 100-102).  Robinson also asked Plaintiff, "Have you gone to Home Depot or any other store while on postal time?" and Plaintiff answered yes.  (Ex. 15 to Def.'s Br.)  Robinson also asked Plaintiff if he had gone home for lunch using a Postal Service vehicle and Plaintiff answered yes.  (*Id*.).

Robinson did not discipline Plaintiff for the firewood incident, but Robinson told Plaintiff that he could no longer drive a Postal Service vehicle to lunch.  (Def.'s and Pl.'s Stmt. at ¶¶ 107 & 114).

When Robinson asked if that directive applied to all VOMAs, Robinson responded, "No, just you."  (Pl.'s Dep. at 58-59).  When Plaintiff asked Robinson, "Are you discriminating against me?" Robinson responded, "If you want to call it that, yeah."  (*Id*.).

Robinson then told the other VOMAs that they could no longer use Postal Service vehicles for lunch.  (Def.'s Stmt. at ¶ 115).

Another VOMA named Blackney, however, testified that she spoke with Robinson after that directive to the VOMAs.  (Blackney EEO Dep., Ex. H to Pl.'s Br., at 223).  Blackney testified that she told Robinson that there are times when VOMAs are out on the road, shuttling vehicles back and forth, and they stop and have lunch.  (*Id*. at 223-224).  Blackney told Robinson

11

that they have always used their vehicles for lunch.  Robinson told Blackney he "did not have a problem with that," and that "[t]his is about Dave Kea and, you know, stopping him."  (*Id*. at 224-26).

Robinson testified during his EEO deposition that there is nothing wrong with taking a Postal Service vehicle, if you're out at the time, . . . you could stop for lunch."  (Def.'s and Pl.'s Stmt. at ¶ 108).

**Plaintiff's Altercation with Robinson in July of 2010**

Plaintiff arrived at the Livonia VMF around 7:00 a.m. on July 21, 2010.  (Def.'s and Pl.'s Stmt. at ¶ 127).  When Plaintiff arrived, he spoke to Stroshein and told him that the vehicle Plaintiff drove to the Livonia VMF was not running properly.  (*Id.* at ¶ 128).  Stroshein told Plaintiff to leave the vehicle there because it was scheduled for maintenance in two weeks and Plaintiff went to retrieve a bag and rain gear from the vehicle.  (Def.'s and Pl.'s Stmt. at ¶ 129).  On his way to the vehicle, Plaintiff saw Guevara and stopped to speak to him.  (*Id*. at ¶ 130).  Plaintiff said to Guevara, "I see we still got some ignorant motherfuckers working here."  (Pl.'s EEOC Hrg. Dep. at 106).  At this time, Plaintiff was carrying a clipboard in this hands.  (*Id*. at 104).

As Plaintiff was walking toward Stroshein, Ferguson said "Look at that motherfucker, keep a clip board with him everywhere he go."  (*Id.* at ¶ 105).

Plaintiff continued walking toward Stroshein and said "one of your ignorant employees still disrespecting me," and when Stroshein asked "what?" Plaintiff repeated that statement.  (*Id*. at ¶¶ 106-107).  Stroshein then stated "they're not my employees, they work for the Post Office." (*Id*.).  At this time, Ferguson was about 30 to 35 feet away and was watching Plaintiff talk to

Stroshein. Robinson was in his office at the Livonia VMF. (*Id*. at ¶ 108).

Plaintiff walked past the secretary's office and into Robinson's office. (*Id*. at ¶¶ 108-109). Plaintiff said to Robinson, his supervisor, "What's up with your mother-fucking employees still disrespecting me?" (Def.'s and Pl.'s Stmt. at ¶ 135). Robinson responded, "What did you say?" and Plaintiff then repeated, "What's up with your mother-fucking employees still disrespecting me?" (Def.'s and Pl.'s Stmt. at ¶¶ 136-37). Ferguson followed Plaintiff into Robinson's office. While Plaintiff and Ferguson were in Robinson's office, Ferguson did not say anything. (Def.'s and Pl.'s Stmt. at ¶ 138). Robinson told Plaintiff to step outside. (*Id*. at 139).

Robinson then came outside and directed Plaintiff to leave the Livonia VMF. (Plaintiff's EEOC Dep. at 113). Robinson testified that Plaintiff was very angry during the incident and did not leave the station when directed to do so. (Robinson EEOC Dep. at 24). Robinson testified that Plaintiff was acting confrontational and that it was "very close to being a physical altercation." (*Id*. at 25). Robinson further testified:

> A.   He was obstinate. I told him to leave the building, he went to get stuff out of a locker. I said you got to go, he went to another locker.
> Q.   Did he leave?
> A.   Eventually, yes.
> Q.   Did you feel threatened at that point?
> A.   Yes, I did.
> Q.   Okay, in what way?
> A.   I just felt that any time he would take a swing at me that I was in danger.
> Q.   Did he take a swing at you?
> A.   No.

(*Id*. at 27).

Robinson also testified that while Plaintiff used profanity as much as everyone else at

13

work, he did not use it more than others. (Robinson EEOC Dep. at 24)

Plaintiff was placed in Emergency Off-Duty Status on July 21, 2010. (Ex. 17 to Def.'s Br.). The notice to Plaintiff informed Plaintiff that the Postal Service had placed him in off-duty status without pay effective immediately because, based on his July 21, 2010 conduct "there is reason to believe that retaining you on duty may result in injury to yourself and others. Accordingly, your retention in a duty status would not have been in the best interest of the Postal Service." (Def.'s and Pl.'s Stmt. at ¶ 148).

Robinson requested that placement and Plumb approved it. (Def.'s and Pl.'s Stmt. at ¶ 146). Robinson spoke to Plumb, the Postal Service Inspectors, and the Postal Service police, about Plaintiff's conduct on July 21, 2010. (*Id*. at ¶147).

Plaintiff presented to the Post Office for an investigative interview on July 26, 2010. Also present were Robinson, the Livonia Postmaster (Tom Cappelli), the Ann Arbor VMF supervisor (Greg Gorski) and union steward (Don Oziemski). (*Id*. at ¶149). Robinson asked Plaintiff questions during this meeting. Robinson discussed with Plaintiff the Postal Service's Zero Tolerance Policy, and also Plaintiff's prior discipline for his conduct at work. On August 5, 2010, the Postal Service issued to Plaintiff a Notice of Removal. Robinson signed the Notice of Removal. Plumb, the acting manager of the Livonia VMF at the time, approved Plaintiff's removal as the reviewing authority. (Def.'s and Pl.'s Stmt. at ¶¶ 149-154).

Plaintiff and the Post Office proceeded to arbitration with respect to his removal. (Def.'s and Pl.'s Stmt. at ¶ 192). On March 16, 2011, the arbitrator upheld the emergency off-duty placement, but converted Plaintiff's removal to a 14-day suspension. (*Id*. at ¶193). Plaintiff also received "back pay from August 23, 2011 until March 23, 2011." (*Id*. at ¶ 194). Plaintiff

14

returned to work on March 23, 2011.  (*Id.* at ¶ 195).

**Plaintiff's 2010 EEO Complaint And EEO Proceedings**

While he was off duty, on August 23, 2010, Plaintiff filed an EEO complaint alleging harassment based on race and retaliation.  (Ex. 22 to Def.'s Br.).

During the EEO proceedings, Blackney testified that Ferguson had called Plaintiff a "nigger" and "stupid nigger" a couple of times in the summer of 2010, but that Plaintiff did not hear him say it.  (Blackney EEO Dep. at 21-23).  It is undisputed that Plaintiff learned, for the first time through Blackney's EEO testimony in 2012, that Ferguson had called Plaintiff a nigger behind his back.  Plaintiff testified that he does not know if anyone had told Robinson about that. (Plaintiff's Dep. at 53-55).

The EEOC issued a decision finding the Plaintiff was not discriminated against based on his race or in retaliation for engaging in protected activity. (Ex. 23 to Def.'s Br.).  Plaintiff was ultimately provided a "Right to Sue" letter by the EEOC.  Thereafter, Plaintiff filed this action.

**Standard of Decision**

Under Fed. R. Civ. P. 56(a), summary judgment is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "No genuine dispute as to any material fact exists where the record 'taken as a whole could not lead a rational trier of facts to find for the non-moving party.'" *Shreve v. Franklin County, Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) (citing *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "Ultimately, the court evaluates 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Shreve, supra* (citing *Anderson v.*

15

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

On summary judgment, the Court views the facts and draws all inferences in the light most favorable to the non-moving party. *Id*. Fed. R. Civ. P. 56(c)(1) provides:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A)   citing to particular parts of material in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## ANALYSIS

Plaintiff alleges that Defendant subjected him to disparate treatment, retaliation, and a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. In its pending Motion for Summary Judgment, Defendant contends that it is entitled to summary judgment as to all claims.

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on his discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

Here, Plaintiff does not assert that his claims are supported by any direct evidence of discrimination or retaliation. Rather, he seeks to proceed under the circumstantial evidence approach.

16

Under the circumstantial evidence approach, a plaintiff must show the existence of facts which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. If the employer articulates such a reason, then the Plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Skrjanc v. Great Lkakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001).

## I.     Race Discrimination Claims Based On Disparate Treatment

In its motion, Defendant contends that it is entitled to summary judgment with respect to Plaintiff's race discrimination claims based on disparate treatment because: 1) Plaintiff cannot establish a prima facie case of race discrimination based on disparate treatment; and 2) even if he could do so, Plaintiff cannot show that Defendant's legitimate, non-discriminatory reason for the adverse actions taken is a pretext for discrimination.

### A.     Prima Facie Case

The parties agree that in order to establish a prima facie case of race discrimination, a plaintiff must establish that: 1) he is a member of a protected class; 2) an adverse employment action was taken against him; and 3) similarly situated employees outside of plaintiff's class were treated more favorably. *Mitchell v. Toledo Hosp.*, 964 F.2d 582, 583 (6th Cir. 1992).

There is no dispute that Plaintiff, an African-American, is a member of a protected class and he can therefore meet the first element. There is, however, a dispute as to what adverse actions occurred and whether similarly situated non-protected employees were treated more

17

favorably than Plaintiff.  Defendant agrees that being placed in off-duty status is an adverse action but it contends that the vehicle restriction does not constitute an adverse action.

### 1.     Adverse Employment Actions

Plaintiff contends that he "suffered two specific adverse employment actions: [1)] he was restricted in the use of Postal Service vehicles and [2)] he was placed on off-duty status which was converted to a removal and then reduced to a 14-day suspension following an EEO hearing." (Pl.'s Br. at 4).  Only the first alleged adverse action is challenged because, for purposes of the motion, Defendant "does not contest that the emergency off-duty placement and 14-day suspension (reduced from a notice of removal through arbitration) qualify as adverse actions." (Def.'s Br. at 3).

Thus, the Court must determine whether Plaintiff being restricted in his use of Postal Service vehicles constitutes an "adverse action" under Title VII.

"An adverse employment action has been defined as a "materially adverse change in the terms and conditions of a plaintiff's employment." *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789, 795 (6th Cir.2004) (*en banc*) (citation omitted).   A "mere inconvenience or an alteration of job responsibilities" is not enough to constitute an adverse employment action. *Id.* at 797 (citing *Kocsis v. Multi–Care Mgmt. Inc.*, 97 F.3d 876, 885–87)." *Deleon v. Kalamazoo Cnty. Road Com'n*, 739 F.3d 914, 918 (6th Cir. 2014).  De minimis actions are not materially adverse.

Rather, "[a]t a minimum, the employee must be able to show a quantitative or qualitative change in the terms of the conditions of employment." *Deleon*, 739 F.3d at 919.   Thus, a change in an employee's working conditions "may constitute a materially adverse employment action,

18

even in the absence of a demotion or pay decrease, so long as the particular circumstances presented give rise to some level of objective intolerability." *Id*.

Viewing the evidence in a light most favorable to Plaintiff, the nature of the VOMA job position is such that VOMAs are constantly out on the road throughout the work day, traveling to and from various cities. VOMAs have always been able to stop and have lunch while driving a Postal Service Vehicle, wherever they may be during the lunch hour. Robinson changed that condition of Plaintiff's employment when he told Plaintiff that he could no longer stop for lunch when driving a Postal Service vehicle. By not being able to use the postal vehicle he is driving during the course of the day to stop for lunch, Plaintiff would have to interrupt the course of his work, *every day,* at lunch time – regardless of how far away he is – and return to his home office in order to eat lunch. The Court concludes that a reasonable juror could conclude that change would negatively impact Plaintiff's ability to perform his job as a VOMA and that condition would be objectively intolerable. The Court finds that Plaintiff has raised a genuine issue of material fact as to whether the restriction at issue constitute an adverse action for purposes of Plaintiff's race discrimination claim.

### 2.      Can Plaintiff Establish That A Similarly Situated, Non-Protected Employee Was Treated More Favorably?

In order to sustain his burden as to the third element, Plaintiff must demonstrate that a comparable non-protected person was treated better than he was. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013). As explained by the Sixth Circuit:

> A plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment for the two to be considered "similarly-situated." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998). The plaintiff and the employees with whom the plaintiff seeks to compare himself

19

or herself must be similar in "all of the relevant aspects." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994). Factors to consider include whether the individuals "dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp*., 964 F.2d 577, 583 (6th Cir.1992).

*Arnold v. City of Columbus*, 515 F. App'x 524, 532 (6th Cir. 2013).

### a.    Vehicle Restriction

With respect to the first alleged adverse action taken by Defendant, the restriction on use of Postal Service vehicles imposed on Plaintiff, the Court concludes that Plaintiff can establish that a similarly-situated non-protected person was treated more favorably than he was.

Viewing the evidence in Plaintiff's favor, Robinson told Plaintiff that he could no longer drive a Postal Service vehicle to lunch.  (Def.'s and Pl.'s Stmt. at ¶¶ 107 & 114).  When Robinson asked if that directive applied to all VOMAs, Robinson responded, "No, just you." (Pl.'s Dep. at 58-59).  When Plaintiff asked Robinson, "Are you discriminating against me?" Robinson responded, "If you want to call it that, yeah."  (*Id*.).

Robinson then told the other VOMAs that they could no longer use Postal Service vehicles for lunch.  (Def.'s Stmt. at ¶ 115).

Blackney, a white woman, was also employed as a VOMA and reported to Robinson. Blackney testified that she spoke with Robinson after that directive to the VOMAs.  (Blackney EEO Dep., Ex. H to Pl.'s Br., at 223).  Blackney testified that she told Robinson that there are times when VOMAs are out on the road, shuttling vehicles back and forth, and they stop and have lunch.  (*Id.* at 223-224).  Blackney told Robinson that they have always used their vehicles

for lunch.  Robinson told Blackney he "did not have a problem with that," and that "This is about Dave Kea and, you know, stopping him."  (*Id.* at 224-26).

Thus, Blackney, a white employee, was treated more favorably.  The Court therefore concludes that, construing the evidence in the light most favorable to Plaintiff, he can establish a prima facie case of disparate treatment based upon this alleged adverse action.

> ### b.      Off-Duty Status

Plaintiff also seeks to establish a claim of disparate treatment based upon his being placed on off-duty status.

Defendant first contends that Plaintiff should not be permitted to compare himself with: 1) VOMAs stationed at locations other than Plymouth (Def.'s Br. at 4); or 2) mechanics.  (Def.'s Br. at 5-6).  Defendant also contends that Plaintiff cannot establish the third element because the employees he seeks to compare himself with did not engage in conduct of "comparable seriousness."  (Def.'s Br. at 6).

In situations where the number of employees in the same position as the plaintiff is small, the "'similarly situated' requirement should not be applied narrowly."  *Arnold,* 515 F. App'x at 532.  As to whether another employee is similarly situated to the plaintiff, the "court 'should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee.'" *Louzon*, 718 F.3d at 563-64 (internal citation omitted).

Because the VOMAs stationed at other locations and mechanics worked in the same general work environment and had the same supervisor (Robinson) and the positions would have the same general work rules and standards, the Court concludes that Plaintiff should be allowed

to compare himself with VOMAs stationed at other locations and with mechanics who reported to Robinson.

In his brief, Plaintiff did not specify the non-protected employee or employees who he alleges engaged in comparable conduct but were treated more favorably.[2]  Rather, in the section of his brief where he should identify the person or person he wishes to compare himself to, he simply restates a long narrative about the facts surrounding the incident that led to his being placed on off-duty status.  (*See* Pl.'s Br. at 9-11).  Plaintiff then makes the argument that swearing was commonplace at the Livonia VMF.  (Pl.'s Br. at 11).  But Plaintiff was not placed on off-duty status for merely using profanity at the workplace.  Plaintiff swore at his direct supervisor in a confrontational manner and then failed to leave the premises as directed by his supervisor.

At the hearing, Plaintiff's Counsel was asked to specify the non-protected employee or employees who Plaintiff alleges engaged in comparable conduct but were treated more favorably than Plaintiff.  The only person Plaintiff's Counsel identified at the hearing was Stroshein, who he contends engaged in similar conduct in 2008.  Stroshein's alleged conduct in 2008, however, does not involve comparable conduct.  The 2008 incident involved one employee (Stroshein) referring to a co-worker (Plaintiff) as stupid.  It did not involve swearing at a supervisor in a confrontational manner and then failing to leave the premises after having been directed to do so by a supervisor.

---

[2]Plaintiff's brief does state, in the relevant portion of his brief, that "no other Livonia VMF employee was disciplined at all for anything that happened on July 21, 2010" and that "Robinson testified that he may have heard Ferguson use the term 'motherfucker'" at some point during his employment.  But Ferguson, like Plaintiff, is African American and is therefore not outside of the protected class.

22

Based on this Court's review of the extensive facts presented in this case, the Court finds that Plaintiff has failed to identify a similarly-situated non-protected employee who was treated better than he was for comparable conduct. Accordingly, the Court concludes that Plaintiff cannot establish a prima facie claim of disparate treatment based upon his being placed on off-duty status.

**B. Can Plaintiff Establish That Defendant's Legitimate, Non-Discriminatory Reasons For Its Actions Are Pretextual?**

Once a defendant articulates a legitimate non-discriminatory reason for the challenged action, the plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Skrjanc v. Great Lkakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001).

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason: 1) had no basis in fact; 2) did not actually motivate the defendant's challenged conduct; or 3) was insufficient to warrant the challenged conduct. *Wexler v. White Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003); *Manzer*, 29 F.3d at 1084. The first type of showing consists of evidence that the proffered bases for the termination never happened (*i.e.*, that they are factually false). With respect to the second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id*. The third showing consists of evidence that other employees, particularly those not in the protected class, were not fired even though they engaged in similar conduct. *Id.*

Where, as here, a case is at the summary judgment stage, a plaintiff seeking to prove illegal discrimination via indirect evidence must submit sufficient evidence from which a

23

reasonable jury could conclude that the defendant's legitimate, nondiscriminatory reasons for its actions are a pretext for unlawful discrimination. *Vincent v. Brewer*, 514 F.3d 489, 494 (6th Cir. 2007).

      **a.**      **Vehicle Restriction**

Because Defendant's Motion for Summary Judgment takes the position that the vehicle restriction does not constitute an adverse action for purposes of Plaintiff's disparate impact claim, it does not articulate its alleged legitimate, non-discriminatory reason for that restriction is. At the August 6, 2015 hearing, Counsel for Defendant offered, as the legitimate, non-discriminatory reason for the challenged action, that there is no reason for an employee to use a postal vehicle for personal reasons.

The Court concludes that Plaintiff has identified sufficient evidence from which a reasonable juror could conclude that the defendant's legitimate, nondiscriminatory reason for the vehicle restriction imposed on Plaintiff is a pretext for discrimination.

Viewing the facts in Plaintiff's favor, although the vehicle restriction ostensibly applied to all VOMAs, Robinson told both Blackney and Plaintiff that it only applied to Plaintiff.

After Robinson told Plaintiff that he could no longer drive a Postal Service vehicle to lunch Plaintiff asked if that directive applied to all VOMAs and Robinson responded, "No, just you." (Pl.'s Dep. at 58-59). When Plaintiff asked Robinson, "Are you discriminating against me?" Robinson responded, "If you want to call it that, yeah." (*Id.*).

Robinson then told the other VOMAs that they could no longer use Postal Service vehicles for lunch. (Def.'s Stmt. at ¶ 115).

Blackney, a white woman, was also employed as a VOMA and reported to Robinson.

24

Blackney testified that she spoke with Robinson after that directive to the VOMAs.  (Blackney EEO Dep., Ex. H to Pl.'s Br., at 223).  Blackney testified that she told Robinson that there are times when VOMAs are out on the road, shuttling vehicles back and forth, and they stop and have lunch.  (*Id.* at 223-224).  Blackney told Robinson that they have always used their vehicles for lunch.  Robinson told Blackney he "did not have a problem with that," and that "This is about Dave Kea and, you know, stopping him."  (*Id*. at 224-26).

Accordingly, Plaintiff's disparate treatment claim based on the vehicle restriction will proceed to trial.

### b.     Off-Duty Status

As set forth above, as to his being placed on off-duty status, Plaintiff has not identified a similarly-situated non-protected employee who engaged in comparable conduct but was treated more favorably than he was.  Unless he can do so, he cannot establish a prima facie case of race discrimination with respect to his claim based on his being placed on off-duty status following the July 21, 2010 incident and the Court need not examine whether Plaintiff can establish that Defendant's legitimate, non-discriminatory reason for the challenged action if pretextual.

## II.     Retaliation

"Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII. See 42 U.S.C. § 2000e–3(a)."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).  As with a Title VII discrimination claim, a Title VII retaliation claim can be established either via direct evidence or the circumstantial evidence approach.  *Id*.  Again, Plaintiff seeks to proceed via the circumstantial evidence approach.

### A.      Can Plaintiff Establish A Prima Facie Case Of Retaliation?

As the Sixth Circuit explained in *Laster*, the "elements of a retaliation claim are similar but distinct from those of a discrimination claim:"

> To establish a prima facie case of retaliation under Title VII, Plaintiff must demonstrate that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Jones v. Johanns*, 264 Fed.Appx. 463, 466 (6th Cir.2007) (citing *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir.2003), and *Burlington N.*, 548 U.S. at 67–68, 126 S.Ct. 2405 (modifying the third element to require a "materially adverse action" rather than an "adverse employment action")).

*Laster*, 746 F.3d at 730.  Alternatively, a Plaintiff can establish the third element "by showing that he 'was subjected to severe or pervasive retaliatory harassment[3] by a supervisor." *Id.*

"Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ––– U.S. –––, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013)." *Laster*, 746 F.3d at 731.

Here, Defendant challenges the following aspects of Plaintiff's retaliation claim: 1) Plaintiff's ability to satisfy the adverse action element with respect to Plaintiff being restricted as to use of Postal Service vehicles; and 2) Plaintiff's ability to establish that his protected activity was the "but-for" cause of any of the challenged adverse actions.  (Def.'s Br. at 13).

---

[3]In this case, Plaintiff seeks to assert a separate hostile work environment claim based on retaliation.

1.      **Is Use Of Vehicle Restriction An Adverse Action For Purposes Of A Retaliation Claim?**

Plaintiff's burden of establishing a materially adverse employment action is "less onerous" with respect to a retaliation claim than it is as to a discrimination claim:

> Unlike a Title VII discrimination claim, "the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Burlington N*., 548 U.S. at 57, 126 S.Ct. 2405. To establish the third element of the prima facie Title VII retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68, 126 S.Ct. 2405 (internal quotation marks and citations omitted). In analyzing the significance of any given act of retaliation, "[c]ontext matters. 'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.' " *Id*. at 69, 126 S.Ct. 2405 (quoting *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 81–82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). "A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Id*. at 82, 118 S.Ct. 998 (citing 2 EEOC 1998 Manual § 8, p. 8–14). "An act that would be immaterial in some situations is material in others." *Id*. (citation omitted). "This more liberal definition permits actions not materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context." *Michael,* 496 F.3d at 596 (holding that placing employee on brief paid administrative leave and 90–day performance plan meet "relatively low bar" of materially adverse action for purpose of retaliation claim); *see also Halfacre v. Home Depot, U.S.A., Inc*., 221 Fed.Appx. 424, 432 (6th Cir.2007) (remanding for reconsideration, in light of *Burlington Northern*, whether assigning the plaintiff a poor performance-evaluation score constituted an adverse employment action for the purpose of setting forth a retaliation claim).

*Laster,* 746 F.3d at 731-32.

As explained above, the Court concludes that Plaintiff has created a genuine issue of fact

27

as to whether the vehicle restriction constitutes an adverse action for purposes of his disparate-treatment race-discrimination claim. Because Plaintiff's burden of establishing a materially adverse employment action is "less onerous" with respect to his retaliation claim, he can also establish that the vehicle restriction is an adverse action as to his retaliation claim. All he has to establish is that a reasonable employee would have found the vehicle restriction materially adverse such that it would deter them from complaining about discrimination in the future. Plaintiff has done so.

### 2.   Can Plaintiff Establish "But-For" Causation?

Again, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 133 S.Ct. at 2528. Accordingly, even if the vehicle use restriction is an adverse action for purposes of a Title VII retaliation claim, Plaintiff still has to establish that his protected activity was the but-for cause of that action being taken by Robinson.

Plaintiff claims that his support of Guevara's EEO complaint is the protected activity that caused Robinson to restrict his use of Postal Service Vehicles. (Pl.'s Br. at 13). That means that Plaintiff must present evidence from which a reasonable jury could find that Robinson would not have so restricted Plaintiff if he had not supported Guevara's complaint.

Plaintiff asserts that the close temporal proximity between Plaintiff's support of Guevara and Robinson imposing the restriction, along with other facts such as that he and other VOMAs frequently used Postal Service vehicles to go to lunch, is sufficient to establish causation. (*Id.*).

The Court agrees that Plaintiff has submitted enough evidence to create a genuine issue of fact as to causation. First, the restriction was imposed by Robinson about a month after Plaintiff

had submitted a letter supporting Guevara's EEO complaint and making negative statements about Robinson.  So there is a fairly close temporal proximity, but standing alone, that would not be enough.

"Although temporal proximity can be sufficient to constitute evidence where an adverse employment action occurs close in time after the employer learns of a protected activity, *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir.2014), when more time elapses between the employer learning of the plaintiff's protected activity and the subsequent adverse employment action, the employee must produce additional evidence of retaliatory motive." *Greene v. U.S. Dept. of Veterans Affairs*, __ F. App'x __, 2015 WL 1296203 at * 3 (6th Cir. 2015).  Given the roughly one-month gap in time, Plaintiff must produce additional evidence of retaliatory motive.  And he has done so.

Viewing the facts in Plaintiff's favor, Robinson told Plaintiff that he could no longer drive a Postal Service vehicle to lunch.  (Def.'s and Pl.'s Stmt. at ¶¶ 107 & 114).  When Robinson asked if that directive applied to all VOMAs, Robinson responded, "No, just you." (Pl.'s Dep. at 58-59).  When Plaintiff asked Robinson, "Are you discriminating against me?" Robinson responded, "If you want to call it that, yeah."  (*Id.*).

Robinson then told the other VOMAs that they could no longer use Postal Service vehicles for lunch.  (Def.'s Stmt. at ¶ 115).  But when another VOMA told Robinson that there are times when VOMAs are out on the road, shuttling vehicles back and forth, and they stop and have lunch, Robinson told her he "did not have a problem with that" and that "This is about Dave Kea and, you know, stopping him."  (Blackney Dep. at 224-26).

      **B.**     **If So, Can Plaintiff Establish That Defendant's Legitimate, Non-Discriminatory Reasons For Its Actions Are Pretextual?**

As explained in Section I.B. of this Opinion & Order, the Court also concludes that Plaintiff has identified sufficient evidence from which a reasonable juror could conclude that the defendant's legitimate, nondiscriminatory reason for the vehicle restriction imposed on Plaintiff is a pretext for retaliation.

**III.**    **Hostile Work Environment Claim**

Although Plaintiff's Complaint does not contain a separate count titled hostile work environment, Defendant notes that the complaint does make references to a hostile work environment.  (Def.'s Br. at 18 n.4).  Moreover, from the parties' briefs, Plaintiff seeks to assert two different hostile work environment claims: 1) a hostile work environment based on race; and 2) a hostile work environment based upon retaliation.

      **A.**     **Hostile Work Environment Claim Based On Race**

To survive a motion for summary judgment on a hostile work environment claim that is based upon race, a plaintiff must establish: 1) the plaintiff was a member of a protected class, 2) the plaintiff was subjected to unwelcome harassment based on race, 3) the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment, and 4) there exists some basis for liability on the part of the employer.  *Owhor v. St. John Health-Providence Hosp.*, 503 F. App'x 307, 312 (6th Cir. 2012) (Citing *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009)).

"Plaintiffs may show race-based harassment with either '(1) direct evidence of the use of

30

race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace.'" *Wade v. Automation Personnel Svs., Inc.*, __ F. App'x __, 2015 WL 2214650 (6th Cir. 2015) (quoting *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir.2011)).

"The third element requires a plaintiff to show that the workplace was permeated with harassment that was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)." *Owhor, supra.* The Sixth Circuit has explained that:

> Regarding the third element, our standard is that the conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir.2000). Some factors we consider include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Id.* (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). A "work environment viewed as a whole may satisfy the legal definition of an abusive work environment ... even though no single episode crosses the Title VII threshold." *Williams v. General Motors Corp.*, 187 F.3d 553, 564 (6th Cir.1999) (quotation omitted).

*Warf v. U.S. Dept. of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013).

To determine whether a work environment is "hostile" or "abusive," the Court looks at the totality of the circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

The Sixth Circuit has held that, under the totality of the circumstances test, an "employer may create a hostile environment for an employee even where it directs its discriminatory acts or

practices at the group of which the plaintiff is a member, and not just at the plaintiff herself."
*Jackson v. Quantex Corp*., 191 F.3d 647, 661 (6th Cir. 1999). Thus, incidents of racial

harassment in the workplace can be considered even if the acts were not directed at the plaintiff,

or the plaintiff did not personally witness them but was aware of them. *Jackson, supra* at 661

(explaining that "[w]e have credited evidence of racial harassment directed at someone other than

the plaintiff when the plaintiff knew that a derogatory term had been used" and "racial epithets

need not be hurled at the plaintiff in order to contribute to a work environment that was hostile to

her."). In other words, a "plaintiff does not need to be the target of, or a witness to harassment in

order for" the court to "consider that harassment in the totality of the circumstances; *but he does*

*need to know about it." Berryman v. Supervalu Holdings, Inc*., 669 F.3d 714, 718 (6th Cir.

2012); *see also Nicholson v. City of Clarksville, Tennessee*, 530 F. A'ppx 434, 442 (6th Cir.

2013) (emphasis added).

     "If the plaintiff can show that a hostile work environment existed, she must then prove

that her employer 'tolerated or condoned the situation' or 'that the employer knew or should have

known of the alleged conduct and failed to make prompt remedial action.'" *Jackson v. Quantex*

*Corp*., 191 F.3d 647, 659 (6th Cir. 1999) (citing *Davis v. Monsanto Chem. Co.*, 858 F.2d 345,

349 (6th Cir. 1988))

     In its Motion for Summary Judgment, Defendant contends that Plaintiff cannot establish a

hostile work environment claim based on race for several reasons, including that: 1) most of the

incidents Plaintiff complains of did not involve race; 2) Plaintiff testified that Robinson removed

the gorilla picture from the bulletin board after Plaintiff complained about it; 3) although there is

testimony that Ferguson called Plaintiff a nigger behind his back, Plaintiff only became aware of

that at the EEOC hearing; 4) complaints about general profanity not involving race do not establish a hostile work environment based on race; and 5) under the totality of the circumstances, Plaintiff cannot establish severe or pervasive harassment based on race.

Defendant also asserts that Plaintiff's hostile work environment claim fails because the evidence establishes that on the occasions when Plaintiff complained to Robinson about his co-workers' conduct, Robinson investigated the claims. Thus, Defendant argues that Plaintiff cannot establish that his employer tolerated or condoned harassment or knew or should have known of the harassment but failed to take action.

In response, Plaintiff contends that he can establish a hostile work environment based on race. His brief (pages 18-21) identifies the following incidents as the evidence that can establish a hostile work environment based on race:

- In May of 2008, when Plaintiff first started as a VOMA in Plymouth, he claims that: 1) an employee would not give him keys that he needed and it took management a week to find them; 2) some employees suggested it was Plaintiff's job to clean their windows; and 3) someone took tools out of the truck Plaintiff drove, which were replaced after Plaintiff advised Robinson.

- In "mid-2008, a gorilla picture was posted on the bulletin board in the hallway leading to the lunchroom and stayed up for at least a year. The gorilla picture," which he states is attached to his Affidavit, "depicts a gorilla scratching his head, with the caption 'Stupid Mother Fucker." Plaintiff's Affidavit states that he found that picture highly offensive. Plaintiff perceived that picture to suggest that African-Americans are stupid gorillas. Plaintiff states that he complained to Robinson about the picture "but it was not removed right away." (Pl.'s Aff. at 2).

- In 2010, there was another offensive picture posted in the Livonia VMF. Postal Employee Paul Guevara signed an Affidavit stating that there "was a chimpanzee cartoon posted on the stockroom wall at the Livonia VMF which had the caption, 'You can't fix stupid.' It was posted sometime in 2010 and remained up for several months at least." (Guevara Aff., Ex. J to Pl.'s Br., at ¶ 2). A copy of the cartoon is attached to Guevara's

33

Affidavit.  Plaintiff's affidavit states that there was a "chimpanzee cartoon posted on the lunch room wall at the Livonia VMF which had the caption 'You Just can't fix stupid.'" (Pl.'s Aff. at ¶ 4).  Plaintiff states that he "used the lunch room every day and had to pass by the picture every time."  (*Id*. at ¶ 5).

• Plaintiff perceived the word "stupid" as "a code word for "Nigger.'" (Pl.'s Aff.).

• Plaintiff testified that his co-worker Stroshein called him stupid on several occasions. (Pl.'s Dep. at 41).

• Guevara states that, on several occasions he heard Stroshein call Plaintiff "stupid" to Plaintiff's face and behind Plaintiff's back.

• Blackney testified that Ferguson (who is African-American) had called Plaintiff a "nigger" and "stupid nigger" a couple of times in the summer of 2010, but that Plaintiff did not hear him say it.  (Blackney Dep. at 21-23).

• Plaintiff learned, for the first time through Blackney's EEOC testimony in 2012, that Ferguson had called Plaintiff a nigger behind Plaintiff's back.

The Court must determine whether this evidence, construed in the light most favorable to Plaintiff, is sufficient to establish a hostile work environment claim based upon race.

Plaintiff began his employment with the Postal Service in 1984 and asserted his hostile work environment claim in 2010.  Thus, he had been employed by the Postal Service for over twenty years when he asserted his claim.  But his hostile work environment claim appears to be focused on the time period during which he was employed as a VOMA, which began in 2008.  (*See* Pl.'s Br. at 23, stating Plaintiff's work environment was hostile and racially based and it "started" in 2008).  Thus, the period at issue is approximately three years.  Plaintiff does not claim that any physically-threatening incidents occurred during that period, or at any time during his employment.

As to the alleged harassment right after he became a VOMA, Plaintiff complains that:  1)

34

an employee would not give him keys that he needed and it took management a week to find

them; 2) some employees suggested it was Plaintiff's job to clean their windows; and 3) someone

took tools out of the truck Plaintiff drove, which were replaced after Plaintiff advised Robinson.

None of those incidents, however, evidence racial animus.  Moreover, Plaintiff acknowledges

that management responded to those incidents by finding the keys and replacing the tools.

 With respect to Ferguson's alleged use of racial epithets behind Plaintiff's back on a few

occasions in 2010, that evidence does not support Plaintiff's hostile work environment claim

because Plaintiff never knew about it until Blackney testified in the EEO action.  While a

plaintiff does not need to witness harassment in order for the court to consider it as part of the

totality of the circumstances, the plaintiff "does need to know about it."  *Berryman v. Supervalu*

*Holdings, Inc.*, 669 F.3d 714, 718 (6th Cir. 2012); *see also Nicholson v. City of Clarksville,*

*Tennessee*, 530 F. A'ppx 434, 442 (6th Cir. 2013).  Here, it is undisputed that Plaintiff did not

know about Ferguson's alleged use of racial epithets.  In addition, there is no evidence in the

record that anyone ever reported Ferguson's use of racial epithets to management.

 That leaves the gorilla picture in 2008, the monkey cartoon in 2010, and Stroshein calling

Plaintiff stupid on several occasions during the three-year period at issue.

 In mid-2008, a picture of a gorilla, on which someone wrote "dumb mother-fucker" or

"stupid mother-fucker" was put up on a bulletin board in the hallway leading to the lunchroom.

There is no evidence in the record to indicate that the picture or caption were directed at Plaintiff

and Plaintiff does not claim otherwise.  Plaintiff's Affidavit states that he perceived the picture as

suggesting that African-Americans are stupid gorillas and that a reasonable juror could so find.

Although Plaintiff testified that Robinson took the picture down after he complained, he states it

35

was "not removed right away."  Robinson's Affidavit does not state how long it took Robinson

to take the picture down after he complained.  Nevertheless, given the nature of the picture and

its caption, and the length of time it remained on the bulletin board, the Court believes that a

reasonable juror could conclude that management knew or should have known about it and failed

to promptly take it down.

Some two years later, in 2010, there was another posting in the workplace at the Livonia

VMF that Plaintiff found offensive.  Guevara's Affidavit states that there "was a chimpanzee

cartoon posted on the stockroom wall at the Livonia VMF which had the caption, 'You can't fix

stupid.'  It was posted sometime in 2010 and remained up for several months at least." (Guevara

Aff., Ex. J to Pl.'s Br., at ¶ 2).  Plaintiff's affidavit states that there was a "chimpanzee cartoon

posted on the lunch room wall at the Livonia VMF which had the caption 'You Just can't fix

stupid.'" (Pl.'s Aff. at ¶ 4).  Plaintiff states that he "used the lunch room every day and had to

pass by the picture every time."  (*Id*. at ¶ 5).  There is no evidence in the record that the cartoon

was directed at Plaintiff and Plaintiff does not claim otherwise.  There is no evidence in the

record that anyone complained to management about the cartoon.

Finally, we have Plaintiff's co-worker calling Plaintiff "stupid" several times over a

three-year period.  Because "Title VII does not set forth a general civility code for the American

workplace," and calling someone stupid has no obvious racial overtones, this would not normally

be considered in connection with a hostile work environment claim based upon race.

*Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 69 (2006).  In the context of this case, however,

the Court concludes that a reasonable juror could possibly believe Plaintiff that Stroshein used

the word "stupid" as a code word for "nigger," given the above offensive picture and cartoon that

36

had been posted in the workplace.  But there is no evidence in the record that Plaintiff ever

complained to management that stupid was being used as a code word for a racial epithet, and on

the one occasion on which Plaintiff did complain to management about being referred to as

stupid by Stroshein, Robinson reprimanded Stroshein.

Looking at the totality of the circumstances, the Court concludes that the present

circumstances are comparable to those in which the Sixth Circuit has found workplace conduct to

be merely offensive and not sufficiently severe or pervasive enough to be cognizable under Title

VII.  *See, e.g.. Smith v. Leggett Wire Co.*, 220 F.3d 752, 760-61 (6th Cir. 2000) (incidents

including one racial slur directed at plaintiff, racially offensive and obscene cartoon circulated in

workplace, and African-American employee referred to as "gorilla" were deemed not severe or

pervasive enough to constitute objectively hostile work environment.).

Accordingly, Defendant is entitled to summary judgment with respect to Plaintiff's

hostile work environment claim that is based upon race.

**B.      Hostile Work Environment Claim Based On Retaliation**

In its Motion for Summary Judgment, Defendant contends that Plaintiff's hostile work

environment claim based on retaliation claim fails because Plaintiff cannot establish that he was

subject to a hostile work environment because of his prior protected activities.  (Def.'s Br. at 21).

Plaintiff disagrees.  (*See* Pl.'s Br. at 21-22).

"To prevail on a Title VII claim of retaliatory hostile work environment a plaintiff must

show that (1) she engaged in activity protected under Title VII; (2) the defendant was aware that

the plaintiff engaged in the protected activity; (3) the plaintiff suffered 'severe or pervasive

retaliatory harassment by a supervisor; and (4) there was a causal connection between the

protected activity and the . . . harassment.'" *Cleveland v. Southern Disposal Waste Connections*, 491 F. App'x 698, 707 (6th Cir. 2012) (quoting *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 793 (6th Cir. 2000)).

It is undisputed that Plaintiff has engaged in protected activity under Title VII and Defendant was aware of that activity. But Plaintiff also has to show the third and fourth elements: 3) that he suffered "severe or pervasive retaliatory harassment *by a supervisor*"; and 4) a causal connection between the protected activity and the retaliatory harassment.

In the limited portion of Plaintiff's response brief wherein he discusses this claim, Plaintiff appears to allege that the perceived harassment came from Ferguson and Stroshein. As Plaintiff's Counsel acknowledged at the hearing, however, neither Ferguson nor Stroshein were Plaintiff's supervisors. Rather, they were Plaintiff's co-workers.

At the hearing, Plaintiff's Counsel stated that the alleged retaliatory harassment came from Robinson, not Ferguson or Stroshein. In support of Plaintiff's argument that he experienced a hostile work environment based on retaliation, Plaintiff's counsel directed the Court to just two events: 1) Robinson's investigation concerning the firewood in 2010; and 2) Robinson having placed Plaintiff on off-duty status in 2010.

The Court concludes that Plaintiff has not adduced sufficient evidence from which a reasonable juror could find "severe or pervasive retaliatory harassment by a supervisor." Accordingly, the Court shall grant summary judgment in favor of Defendant as to Plaintiff's hostile work environment claim that is based on retaliation.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary

Judgment is GRANTED IN PART AND DENIED IN PART.   The motion is GRANTED to the extent that Defendant is entitled to summary judgment in its favor with respect to the following claims: 1) Plaintiff's disparate-treatment race-discrimination claim based upon being placed on off-duty status in 2010; and 2) Plaintiff's hostile work environment claims based on race and retaliation.  The Motion is DENIED in all other respects.

As such, the following claims shall proceed to trial: 1) Plaintiff's disparate-treatment race-discrimination claim based upon the vehicle restriction; and 2) Plaintiff's retaliation claim based upon the vehicle restriction.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 13, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 13, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager